**FILED**

**NOVEMBER 16, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**07 C 6524**

|  |  |
|---|---|
| DEMING ZHOU and THERESA CHANG, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| KAIBLE CORPORATION and KAI JIANG, | ) ) ) ) |
| Defendants. | ) |

Case No. _____

~~JUDGE~~ HIBBLER
MAGISTRATE JUDGE KEYS

Plaintiffs demand Trial by Jury

**CEM**

## COMPLAINT

Plaintiffs Deming Zhou ("Zhou") and Theresa Chang ("Chang") (collectively, "Plaintiffs"), hereby complain against Defendants Kaible Corporation ("Kaible" or the "Corporation") and Kai Jiang ("Jiang") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1.      This is a suit against Kaible and Kaible's president and director Jiang for violations of federal and state securities laws and common law, arising out of Plaintiffs' purchase of 1,500,000 shares of Kaible stock (the "Shares") in June and July of 2005, for the total sum of $300,000. Plaintiffs seek to recover compensatory and punitive damages suffered as a result of Defendants' scheme to defraud Plaintiffs. Defendants defrauded Plaintiffs through a series of written and oral misrepresentations and omissions of material fact designed to induce Plaintiffs to purchase the Shares.

2.      From the period May to July, 2005, Defendants intentionally provided Plaintiffs with misleading and false information regarding Kaible's financial situation, its patents, its investors, its board of directors, and its financial projections. In addition, Jiang made false and

misleading statements regarding China's corporate licensing requirements. At the time Defendants made these misstatements they knew or should reasonably have known them to be false. As a direct result, Plaintiffs paid $300,000 dollars to acquire the Shares.

## PARTIES

3.      The Plaintiffs, Zhou and Chang, are husband and wife, respectively, and are investors in Kaible Corporation. They are citizens of the State of Illinois and currently reside at 616 Dundee Road, Glencoe, IL, 60022.

4.      Defendant Kaible Corporation is a Delaware Corporation with offices in Shanghai, China, and at 1100 Jensen Drive, Lake Forest, Illinois, 60045

5.      Defendant Jiang is the president and director of Kaible Corporation, as well as its founder. He maintains a residence at 1100 Jensen Dr., Lake Forest, Illinois, 60045. On information and belief, he is a citizen of the United States.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), Rule 10b-5 promulgated thereunder by the Securities Exchange Commission, 17 C.F.R. § 240.10b-5, Section 12(a)(2) of the Exchange Act of 1933, 15 U.S.C. § 77l; the Illinois Securities Law of 1953, 815 ILCS 5/1, *et seq.*, and the common law.

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1367(a) and Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa.

8.      Venue is proper in this District pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the

making of materially false and misleading statements and information, occurred in substantial part in this District.    Additionally, Kaible maintains an office in this District, and upon information and belief, Jiang maintains a residence in this District.

9.    In connection with the acts alleged in this Complaint, Defendants used the means and instrumentalities of interstate commerce, including but not limited to the mail and interstate telephone communications.

## FACTS

### Defendants' Fraudulent Statements to Plaintiffs

10.    Defendant Jiang met Plaintiffs Zhou and Chang in January, 2001, through a mutual acquaintance.

11.    On or around May 17, 2005, Jiang called Zhou to request a meeting, as Jiang wished to present an investment opportunity to Zhou and his wife, Chang.  Zhou agreed.

12.    On the same day, Jiang came to Plaintiffs' home.  Prior to discussing the nature of his "opportunity" with Plaintiffs, Jiang requested that they sign a confidentiality agreement. Plaintiffs and Jiang executed a confidentiality agreement.

13.    Jiang then told Plaintiffs about his new company, Kaible, and presented them with the Kaible Business Plan ("Business Plan"), a copy of which is attached as Exhibit A.  According to Jiang, Kaible would operate exclusively in China, providing its customers with cellular telephone technology which would allow them to compare product prices as they shopped.  Jiang told Plaintiffs that Kaible customers would be able to scan the bar code of a product into their cellular phone, which would then transmit the product's information to the Kaible data center. The data center would then process the bar code, search for information regarding the product at

other stores in the customer's area, and send its search results to the customer, including alternate pricing, customer ratings, and other useful information.

14.     The Business Plan included a two year projection of total revenue between $80.0 and $200.0 million (U.S.), and a five year projection of total revenue between $397.8 and $800.0 million (U.S.).  Exhibit A, pp. 12-13.

15.     After presenting Plaintiffs with the Business Plan, Jiang showed Plaintiffs photographs of himself standing next to various American dignitaries, including former U.S. Secretary of State Madeline Albright, former U.S. Secretary of Commerce William Daley, and Chicago Mayor Richard Daley.

16.     Jiang told Plaintiffs that Madeline Albright, William Daley, and Mayor Daley, among other well-known American political and business figures, had already agreed to become members of Kaible's Board of Directors.

17.     Defendants' assertions contained on the Business Plan regarding the estimates of Kaible's revenues were materially false and misleading, and Defendants knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

18.     Jiang's assertions regarding the above-named American dignitaries becoming members of Kaible's Board of Directors were materially false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

19.     At the same meeting, Jiang also showed Plaintiffs photographs of himself with a number of well-known Chinese political and business figures, including the Chinese Secretary of Foreign Affairs, Li Shao Xing, the Chinese Secretary of Commerce, Buo Xi Lai, and the Mayor of Shanghai, Han Zheng.

20.     Jiang informed Plaintiffs that these Chinese dignitaries were "close personal friends" of his, and that they were invaluable business connections for Kaible.

21.     Finally, Jiang told Plaintiffs that Mr. Zhu Rong Ji, the retired Premier of China, was another potential member of the Kaible Board of Directors.

22.     Jiang's statements regarding the above-named Chinese dignitaries, including Mr. Zhu Rohg Ji as a potential member of the Kaible Board of Directors, were materially false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

23.     After displaying his photographs and the Business Plan, Jiang asked Plaintiffs to invest $1.0 million (U.S.) in Kaible.

24.     Zhou told Jiang that Plaintiffs did not have that much money available to invest. Jiang insisted that Plaintiffs' investment in Kaible would be a "lifetime opportunity." He also stated that he would "keep the door open" to Plaintiffs until early July, 2005, and that he would allow them to purchase Kaible shares at $0.20 (U.S.) per share, because the three of them were such "good friends." Jiang then left Plaintiffs' home.

25.     Over the course of the following week, Jiang called Plaintiffs almost every day to reiterate what he described as the momentous opportunity he was offering them.

26.     Jiang also asserted during these calls that an individual named Jenny Jiang, represented to be Jiang's sister, was in Beijing, China, setting up the Company, and that she had already applied for a corporate license in China. In addition, Jiang claimed that Kaible had already acquired a number of other investors.

27.    Jiang's statement that Kaible had acquired a number of other investors was materially false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

28.    On May 30, 2005, at Jiang's invitation, Plaintiffs visited him at his home in Lake Forest ("May Meeting").

29.    At the May Meeting, after informing Plaintiffs that his newly-remodeled house was worth $7.0 million (U.S.), Jiang took Plaintiffs to his study to once again display the photographs of himself standing next to various American and Chinese luminaries.

30.    Following the May Meeting, Jiang continued to call Plaintiffs on a near-daily basis. With each telephone call, Jiang reiterated that investment in Kaible was a "lifetime opportunity."

31.    During these telephone calls Jiang made materially false and misleading statements, including that:

(a)    Jiang had personally invested $10.0 million (U.S.) in Kaible;

(b)    Jiang had invested the $10.0 million (U.S.) because the Chinese government set this amount as a minimum in order to file an application for a "Mobile Value Added Services," or "VAS" company, a category of company into which Kaible fell; and

(c)    Jiang would spend an additional $5.0 million (U.S.) to perfect the Kaible technology.

32.    Jiang had not, in fact, personally invested $10.0 million (U.S.) in Kaible, nor would he spend $5.0 million (U.S.) perfecting the Kaible technology.

33.    In order to file an application for a VAS company in China, the Chinese government does not require $10.0 million (U.S.) but rather 1 million Chinese Yuan for a local

city application and 10 million Chinese Yuan for a nationwide application, equivalent to approximately $120,000 and $1,200,000 (U.S.), respectively, as of the date of this filing.

34.    Jiang knew or should reasonably have known that the statements set forth in Paragraph 31, above, were materially false and misleading, and he knowingly or recklessly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

35.    In addition, during this conversation, Jiang told Plaintiffs that he had hired a crew of workers and engineers from Motorola and other companies, and those engineers had already completed the invention process for the cellular telephone technology that Kaible would sell, and that Kaible had obtained all necessary patents in the United States for this technology.

36.    Jiang knew or should reasonably have known that the forgoing statements were materially false and misleading, and he knowingly or recklessly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

37.    In early June, 2005, Zhou told Jiang that he and his wife were considering investing in Kaible, and requested that Jiang send the necessary paperwork to review.

38.    Jiang then faxed Plaintiffs a Kaible Subscription Agreement, the Kaible By-Laws, and a document entitled "Kaible Purchase of Common Stock."

39.    Jiang incorporated Kaible on or around June 15, 2005.

40.    On June 20, 2005, prior to making an investment in Kaible, Zhou requested that Jiang confirm in writing that Jiang had invested $15.0 million (U.S.) in Kaible.  Jiang agreed to do so on the condition that Plaintiffs once again meet with him at his home.  Zhou agreed.

41.    On June 21, 2007, Plaintiffs returned to Jiang's home in Lake Forest ("June Meeting"), where Jiang gave Plaintiffs a signed document, a copy of which is attached as Exhibit B, stating that:

(a)    Jiang had contributed to Kaible "cash and property" with a combined value of approximately $15.0 million (U.S.); and

(b)    Kaible's market capitalization value was $30.0 million (U.S.) as of June 20, 2005.

42.    The statements contained in Exhibit B made by Jiang were materially false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

43.    Jiang also told Plaintiffs at the June Meeting that he had made so much money in 2004 that he would be personally donating $20.0 million (U.S.) to build 100 churches in China.

44.    Based upon the foregoing false and misleading statements by Defendants regarding Kaible's technology, progress, funding, and investors, taken individually or together, Plaintiffs decided to invest $150,000 of their savings in the Company.

45.    At the June meeting, Plaintiffs signed a Kaible Purchase of Common Stock Agreement and the Subscription Agreement.  They then executed a check to Kaible Corporation in the amount of $150,000, a copy of which is attached as Exhibit C.  Jiang requested that all documents, including the check, be dated June 17, 2005, despite the fact that it was actually June 21, 2005.

46.    Following the June Meeting, Jiang continued his almost daily telephone calls to Plaintiffs, urging them to invest more money in Kaible, and stating that more investors had come on board.

47.    Jiang's statements regarding further investors in Kaible were false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest additional monies in Kaible.

48.    Based upon Jiang's false and misleading statements regarding the additional investors, in addition to the foregoing false and misleading statements that Defendants had made regarding Kaible's technology, progress, funding, and initial investors, taken individually or taken together, Plaintiffs decided to invest another $150,000 in the Company.

49.    On July 5, 2005, Plaintiffs again met with Jiang at his home ("July Meeting").

50.    Jiang told Plaintiffs that he sold shares at $0.20 (U.S.) exclusively to them, and that this was a special price because of their friendship.

51.    Neither Jiang nor the Kaible documents made any mention of "common" or "preferred" Kaible stock gradations.  Jiang told Plaintiffs at the June Meeting that they would share 2% of all of Kaible's profits and losses, since they would own 2% of the stock if they decided to purchase an additional 750,000 Kaible shares.

52.    Plaintiffs then signed another Kaible Purchase of Common Stock and another Kaible Subscription Agreement, and executed a second check to Kaible in the amount of $150,000, thereby purchasing another 750,000 of Kaible shares.  A copy of the check is attached as Exhibit D.

53.    Once again, Jiang requested that all documents, including the second check for $150,000, be dated June 17, 2005.

54.    Jiang's statements regarding Kaible's stock structure and Plaintiffs' ownership interest were materially false and misleading, and Jiang made them to induce Plaintiffs to invest in the Company.  In fact, at the time he made those statements, Jiang had secretly decided that Plaintiffs' stock would be deemed "common" stock, while Jiang's own investment would be deemed "preferred" stock.

**Defendants' Actions Following Plaintiffs' Second Purchase of Shares**

55.    Jiang traveled to China in mid-July of 2005 to set up the Kaible office.  Also in mid-July of 2005, Plaintiffs went to China to visit their families.  In or around August, 2005, Jiang stated that he would open a Kaible office in Shanghai.

56.    Zhou remained in China late August until late December, 2005, and during that time, he helped Jiang set up the Shanghai office in terms of selecting equipment and furniture ("Shanghai Office").  Zhou returned to the United States in early January, 2006.

57.    Prior to Zhou's departure from China, Jiang assured Zhou that the next time Jiang was in the United States he would contact Plaintiffs and arrange a meeting to discuss Kaible's progress.

58.    Jiang returned to the United States in February, 2006, to celebrate the Chinese New Year.  However, despite his promise to Zhou, Jiang failed to contact Plaintiffs to arrange a meeting.

59.    By the summer of 2006, in contrast to Jiang's incessant telephoning of the previous year, Jiang had failed to contact Plaintiffs even once to update them on Kaible's progress.

60.    Throughout 2006, Plaintiffs' concern for their investment mounted as Defendants' silence stretched on.

61.    In October, 2006, Plaintiffs traveled to China to visit family and friends.  Once there, they tried repeatedly and without success to reach Jiang by telephone.

62.    In November, 2006, after Plaintiffs had left numerous unanswered messages on Jiang's cellular phone, Jiang finally returned one of Plaintiffs' calls.

63.     At Plaintiffs' insistence, Jiang reluctantly agreed to meet with them in Shanghai in December of 2006 ("Shanghai Meeting").

64.     When meeting with Jiang, Plaintiffs noted that since Zhou's last trip to China in 2005-2006, the Shanghai Office had considerably downsized, and was now operating out of a small, cramped apartment.

65.     At the Shanghai Meeting, Plaintiffs requested that Jiang provide them with financial documents pertaining to their investments.

66.     Jiang refused, stating only that he would send the statements to them "later."

67.     Plaintiffs returned to the United States in December, 2006, empty-handed, having learned nothing regarding the fate of their investments.

68.     In February, 2007, Plaintiffs once again called Jiang to request financial information.  Although Jiang took Plaintiffs' call, he immediately transferred them to his sister, Jenny Jiang.  When Plaintiffs requested that Ms. Jiang send them the financial information, Ms. Jiang refused.  She then informed Plaintiffs that Jiang would have to speak with his lawyer before sending them anything.

69.     Through disclosures made by Jenny Jiang, inadvertently or otherwise, during the course of this telephone conversation, Plaintiffs came to understand the following:

(a)     Jiang had not, in fact, invested $15.0 million (U.S.) in Kaible.  Rather, he had invested closer to $300,000;

(b)     Kaible had far fewer investors than Jiang had led Plaintiffs to believe.  In fact, Kaible had perhaps as few as three investors: Jiang himself and the Plaintiffs;

(c) Defendants had secretly deemed Plaintiffs' Shares "common" shares, while they had deemed Jiang's shares "preferred" shares. Therefore, should Kaible be sold, Plaintiffs would be last in line for the return of their money; and

(d) Jiang was in fact considering selling Kaible.

70. At the time of this filing, Plaintiffs have still received no information regarding the fate of their investment in Kaible. Based upon information and belief, Plaintiffs presently believe that their Stock is worthless.

71. On September 13, 2007, in accordance with the Illinois Securities Law of 1953, Plaintiffs sent a letter to Defendants electing to void the sale of the 1,500,000 Shares, and requesting that Kaible repurchase the Shares for the original cost of $300,000 plus 10% interest per annum from the date of its purchase by Plaintiffs (the "Demand Letter"). A copy of the Demand Letter is attached as Exhibit E.

72. At the time of this filing, Defendants have neither complied with nor otherwise responded to Plaintiffs' Demand Letter.

## COUNT I:
### Against Both Defendants for
### Violation of Section 10(b) of the Securities Exchange Act
### And Rule 10b-5 Promulgated Thereunder

73. Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 72 above as Paragraph 73 of the Complaint.

74. Defendants carried out a plan, scheme and course of conduct which was intended to and did (i) deceive Plaintiffs, as alleged herein; (ii) misrepresent the financial condition and business prospects of Kaible; and (iii) cause Plaintiffs to purchase the Shares. In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

75.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to correct the misleading statements, and did so with the intent that Plaintiffs would rely on the misrepresentations and/or the incomplete and false information in making their decisions to purchase the Shares; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5.

76.    The willfulness, motive, knowledge, and recklessness of Jiang is imputed to Kaible, which is primarily liable for the securities law violations or is liable for the acts of Jiang under the doctrine of respondent superior.

77.    In addition to the duties of full and truthful disclosure imposed on Defendants as a result of their making of affirmative statements, or participating in the making of affirmative statements to Plaintiffs, Defendants had a duty to promptly disseminate truthful information that would be material to Plaintiffs, including accurate and truthful information with respect to Kaible's financial condition and business prospects.

78.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the wires and mails, engaged and participated in a continuous course of conduct to provide materially false and misleading information about the financial condition and business prospects of Kaible, as specified herein.

79.    In light of these false and misleading misrepresentations, taken individually or together, Plaintiffs purchased the Shares.  At the time of Defendants' misrepresentations and omissions, Plaintiffs were ignorant of their falsity, believed them to be true, and justifiably relied on them.  Had Plaintiffs known of the true financial condition and business prospects of Kaible,

which were intentionally misrepresented by Defendants, Plaintiffs would not have purchased or otherwise acquired the Shares.

80.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

81.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder.

**WHEREFORE,** Plaintiffs pray for relief and judgment, as follows: (a) awarding compensatory damages in favor of Plaintiffs against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in the amount of $300,000 plus interest thereon; (b) awarding Plaintiffs their reasonable costs and expenses incurred in this action, including attorney fees; and (c) such other and further relief as the Court may deem just and proper.

**COUNT II:**
**Against Jiang for Violation of**
**Section 20(a) of the Securities Exchange Act**

82.     Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 81 above as Paragraph 82 of the Complaint.

83.     Defendant Jiang was the controlling person of Kaible within the meaning of Section 20(a) of the Securities Exchange Act as alleged herein.

84.     Defendant Jiang had the power or ability and exercised the same to cause Kaible to engage in the illegal conduct and practices complained of herein.

85.     As set forth above, Kaible violated Section 10(b) and Rule 10b-5 by its acts and omissions as alleged in this Complaint.  By virtue of his position as a controlling person, Jiang is liable pursuant to Section 20(a) of the Securities Exchange Act for Kaible's violations of law.

14

86.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

**WHEREFORE,** Plaintiffs pray for relief and judgment, as follows: (a) awarding compensatory damages in favor of Plaintiffs against Jiang for all damages sustained as a result of Defendants' wrongdoing, in the amount of $300,000 plus interest thereon; (b) awarding Plaintiffs their reasonable costs and expenses incurred in this action, including attorney fees; and (c) such other and further relief as the Court may deem just and proper.

**COUNT III:**
**Against Both Defendants for Violations of**
**Section 12(a)(2) of the Securities Act**

87.    Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 86 above as Paragraph 87 of the Complaint.

88.    Defendants were sellers, offerors and/or solicitors of the sale of the Shares sold to Plaintiffs.

89.    Defendants carried out a plan, scheme and course of conduct which was intended to and did (i) deceive Plaintiffs, as alleged herein; (ii) misrepresent the financial condition and business prospects of Kaible; and (iii) cause Plaintiffs to purchase the Shares.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

90.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to correct the misleading statements, and did so with the intent that Plaintiffs would rely on the misrepresentations and/or the incomplete and false information in making their decisions to purchase the Shares; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs.

91.    The willfulness, motive, knowledge, and recklessness of Jiang is imputed to Kaible, which is primarily liable for the securities law violations or is liable for the acts of Jiang under the doctrine of respondent superior.

92.    In addition to the duties of full and truthful disclosure imposed on Defendants as a result of their making of affirmative statements, or participating in the making of affirmative statements to Plaintiffs, Defendants had a duty to promptly disseminate truthful information that would be material to Plaintiffs, including accurate and truthful information with respect to Kaible's financial condition and business prospects.

93.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the wires and mails, engaged and participated in a continuous course of conduct to provide materially false and misleading information about the financial condition and business prospects of Kaible, as specified herein.

94.    Plaintiffs relied on Defendants' false and misleading misrepresentations, taken individually or together, Plaintiffs purchased the Shares.    At the time of Defendants' misrepresentations and omissions, Plaintiffs were ignorant of their falsity, believed them to be true, and justifiably relied on them.    Had Plaintiffs known of the true financial condition and business prospects of Kaible, which were intentionally misrepresented by Defendants, Plaintiffs would not have purchased or otherwise acquired the Shares.

95.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

96.    By virtue of the foregoing, Defendants have violated Section 12(a)(2) of the Securities Act of 1933.

**WHEREFORE,** Plaintiffs pray for relief and judgment, as follows: (a) awarding compensatory damages in favor of Plaintiffs against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in the amount of $300,000 plus interest thereon; (b) awarding Plaintiffs their reasonable costs and expenses incurred in this action, including attorney fees; and (c) such other and further relief as the Court may deem just and proper.

**COUNT IV:**
**Against Both Defendants for**
**Violations of Illinois Securities Law of 1953**

97.     Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 96 above as Paragraph 97 of the Complaint.

98.     Defendants carried out a plan, scheme and course of conduct which was intended to and did (i) deceive Plaintiffs, as alleged herein; (ii) misrepresent the financial condition and business prospects of Kaible; and (iii) cause Plaintiffs to purchase the Shares.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

99.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to correct the misleading statements, and did so with the intent that Plaintiffs would rely on the misrepresentations and/or the incomplete and false information in making their decisions to purchase the Shares; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in violation of the Illinois Securities Law of 1953, 815 ILCS 5/1 *et seq.*

100.    All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged above and as described in Section 2.4 of the Illinois Securities Law of 1953, 815 ILCS 5/2.4.

101.    In addition to the duties of full and truthful disclosure imposed on Defendants as a result of their making of affirmative statements, or participating in the making of affirmative statements to Plaintiffs, Defendants had a duty to promptly disseminate truthful information that would be material to Plaintiffs, including accurate and truthful information with respect to Kaible's financial condition and business prospects.

102.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the wires and mails, engaged and participated in a continuous course of conduct to provide materially false and misleading information about the financial condition and business prospects of Kaible, as specified herein.

103.    Plaintiffs relied on Defendants' false and misleading misrepresentations, taken individually or together, Plaintiffs purchased the Shares.    At the time of Defendants' misrepresentations and omissions, Plaintiffs were ignorant of their falsity, believed them to be true, and justifiably relied on them.    Had Plaintiffs known of the true financial condition and business prospects of Kaible, which were intentionally misrepresented by Defendants, Plaintiffs would not have purchased or otherwise acquired the Shares.

104.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

105.    On September 13, 2007, Plaintiffs sent a notice to Defendants, voiding the purchase of the Shares.  Defendants never responded.

106.    By virtue of the foregoing, Defendants have violated Section 12 of the Illinois Securities Law of 1953, 815 ILCS 5/12.

**WHEREFORE,** Plaintiffs pray for relief and judgment, as follows: (a) awarding Plaintiffs against all Defendants, jointly and severally, the amount of consideration that Plaintiffs paid for the Shares or $300,000, together with interest from the dates that the Kaible shares were purchased by Plaintiffs at the rate of 10 percent per annum; (b) awarding Plaintiffs their reasonable costs and expenses incurred in this action, including attorney fees; and (c) such other and further relief as the Court may deem just and proper.

### COUNT V:
### Against Both Defendants for
### Common Law Fraud

107.    Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 106 above as Paragraph 107 of the Complaint.

108.    Defendants carried out a plan, scheme and course of conduct which was intended to and did (i) deceive Plaintiffs, as alleged herein; (ii) misrepresent the financial condition and business prospects of Kaible; and (iii) cause Plaintiffs to purchase the Shares.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

109.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to correct the misleading statements, and did so with the intent that Plaintiffs would rely on the misrepresentations and/or the incomplete and false information in making their decisions to purchase the Shares; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5.

110.    The willfulness, motive, knowledge, and recklessness of Jiang is imputed to Kaible, which is primarily liable for the securities law violations or is liable for the acts of Jiang under the doctrine of respondent superior.

111.    In addition to the duties of full and truthful disclosure imposed on Defendants as a result of their making of affirmative statements, or participating in the making of affirmative statements to Plaintiffs, Defendants had a duty to promptly disseminate truthful information that would be material to Plaintiffs, including accurate and truthful information with respect to Kaible's financial condition and business prospects.

112.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the wires and mails, engaged and participated in a continuous course of conduct to provide materially false and misleading information about the financial condition and business prospects of Kaible, as specified herein.

113.    Plaintiffs relied on Defendants' false and misleading misrepresentations, taken individually or together, Plaintiffs purchased the Shares.    At the time of Defendants' misrepresentations and omissions, Plaintiffs were ignorant of their falsity, believed them to be true, and justifiably relied on them.    Had Plaintiffs known of the true financial condition and business prospects of Kaible, which were intentionally misrepresented by Defendants, Plaintiffs would not have purchased or otherwise acquired the Shares.

114.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

**WHEREFORE,** Plaintiffs pray for relief and judgment, as follows: (a) awarding compensatory damages in favor of Plaintiffs against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in the amount of $300,000 plus

interest thereon; (b) awarding punitive damages of $1 million in favor of Plaintiffs against all

Defendants, jointly and severally, for the illegal conduct of Defendants; (c) awarding Plaintiffs

their reasonable costs and expenses incurred in this action, including attorney fees; and (d) such

other and further relief as the Court may deem just and proper.

### JURY DEMAND

      Plaintiffs demand a trial by a jury.

Dated:  November 16, 2007

                      Respectfully submitted,

                      Mr. Deming Zhou and Ms. Theresa Chang


                      By:  /s/ LYNN A. ELLENBERGER
                            One of Their Attorneys

Anthony R. Licata  - ARDC # 3124572
alicata@shefskylaw.com
Lynn A. Ellenberger – ARDC# 6244188
lellenberger@shefskylaw.com
Jessica A. Edgerton – ARDC# 6289418
jedgerton@shefskylaw.com
SHEFSKY & FROELICH LTD.
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone:      (312) 527-4000
Facsimile:      (312) 527-4011

1061172_2