UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMING ZHOU and<br>THERESA CHANG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.   07 C 6524 |
| v. | ) | |
| | ) | Judge Hibbler |
| KAIBLE CORPORATION and<br>KAI JIANG, | ) | |
| | ) | Magistrate Judge Keys |
| | ) | |
| Defendants. | ) | |
| | ) | |
| KAIBLE CORPORATION, | ) | |
| | ) | |
| Counter-plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DEMING ZHOU, | ) | |
| | ) | |
| Counter-defendant. | ) | |

**ANSWER, AFFIRMATIVE DEFENSES
AND COUNTER-CLAIM OF
DEFENDANTS, KAIBLE CORPORATION**

This is the Answer, Affirmative Defenses Defendants, Kaible Corporation ("Kaible") and

Kai Jiang ("Kai"), and Counter-Claim of Kaible Corporation against Deming Zhou.


1.     This is a suit against Kaible and Kaible's president and director Jiang for
violations of federal and state securities laws and common law, arising out of Plaintiffs' purchase
of 1,500,000 shares of Kaible stock (the "Shares") in June and July of 2005, for the total sum of
$300,000.  Plaintiffs seek to recover compensatory and punitive damages suffered as a result of
Defendants' scheme to defraud Plaintiffs.  Defendants defrauded Plaintiffs through a series of
written and oral misrepresentations and omissions of material fact designed to induce Plaintiffs
to purchase the Shares.

**ANSWER:**     **ADMIT the suit speaks for itself as to what is alleged.  DENY the**

**remaining allegations of Paragraph 1.**

2.      From the period May to July, 2005, Defendants intentionally provided Plaintiffs with misleading and false information regarding Kaible's financial situation, its patents, its investors, its board of directors, and its financial projections. In addition, Jiang made false and misleading statements regarding China's corporate licensing requirements. At the time Defendants made these misstatements they knew or should reasonably have known them to be false. As a direct result, Plaintiffs paid $300,000 dollars (sic) to acquire the Shares.

**ANSWER:     DENY.**

3.      The Plaintiffs, Zhou and Chang, are husband and wife, respectively, and are investors in Kaible Corporation. They are citizens of the State of Illinois and currently reside at 616 Dundee Road, Glencoe, IL   60022.

**ANSWER:     ADMIT Plaintiffs are citizens of Illinois living at the address identified, DENY the remaining allegations of this Paragraph and state further that at all times relevant, Plaintiff Zhou was President of Kaible Corporation.**

4.      Defendant Kaible Corporation is a Delaware Corporation with offices in Shanghai, China, and at 1100 Jensen Drive, Lake Forest, Illinois   60045.

**ANSWER:     ADMIT.**

5.      Defendant Jiang is the president and director of Kaible Corporation, as well as its founder. He maintains a residence at 1100 Jensen Drive, Lake Forest, Illinois 60045. On information and belief, he is a citizen of the United States.

**ANSWER:     ADMIT Kai is chairman of Kaible and co-founder with Zhou of Kaible. Kai is a citizen of the United States and DENY the remaining allegations of this Paragraph 5.**

6.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), Rule 10b-5 promulgated thereunder by the Securities Exchange Commission, 17 C.F.R. § 240.10b-5, Section 12(a)(2) of the Exchange Act of 1933, 15 U.S.C. § 77l; the Illinois Securities Laws of 1953, 815 ILCS 5/1, *et seq*., and the common law.

**ANSWER:     ADMIT the Complaint seeks to assert claims under the laws identified**

**in this Paragraph.**

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337 and 1367(a) and Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa.

**ANSWER:     ADMIT, but state that service on Defendant Kai was defective.**

8.     Venue is proper in this District pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  Many of the acts charged herein, including the making of materially false and misleading statements and information, occurred in substantial part in this District.  Additionally, Kaible maintains an office in this District, and upon information and belief, Jiang maintains a residence in this District.

**ANSWER:     ADMIT the Court has venue over this action and DENY the**

**remaining allegations of this Paragraph 8.**

9.     In connection with the acts alleged in this Complaint, Defendants used the means and instrumentalities of interstate commerce, including but not limited to the mail and interstate telephone communications.

**ANSWER:     DENY.**

## FACTS

10.     Defendant Jiang met Plaintiffs Zhou and Chang in January, 2001 through a mutual acquaintance.

**ANSWER:     ADMIT.**

11.     On or around May 17, 2005, Jiang called Zhou to request a meeting, as Jiang wished to present an investment opportunity to Zhou and his wife, Chang.  Zhou agreed.

**ANSWER:     DENY, but ADMIT Kai and Zhou held many meetings both before**

**and after May 2005, some initiated by the former, others by the latter.**

12.    On the same day, Jiang came to Plaintiffs' home.  Prior to discussing the nature of his "opportunity" with Plaintiffs, Jiang requested that they sign a confidentiality agreement. Plaintiffs and Jiang executed a confidentiality agreement.

**ANSWER:    Defendants ADMIT discussing Kaible with Plaintiffs in May 2005,**

**and do not have sufficient information to respond to the remaining allegations of**

**this Paragraph 12 and, therefore, DENY them.**

13.    Jiang then told Plaintiffs about his new company, Kaible, and present them with the Kaible Business Plan ("Business Plan"), a copy of which is attached as Exhibit A.  According to Jiang, Kaible would operate exclusively in China, providing its customers with cellular telephone technology which would allow them to compare product prices as they shopped.  Jiang told Plaintiffs that Kaible customers would be able to scan the bar code of a product into their cellular phone, which would then transmit the product's information to the Kaible data center. The data center would then process the bar code, search for information regarding the product at other stores in the customer's area, and send its search results to the customer, including alternate pricing, customer ratings, and other useful information.

**ANSWER:    ADMIT Kai discussed Kaible with Plaintiffs, that Zhou and Chang**

**had been investors with Kai in other matters, and that the summary of Kaible's**

**operations described in Paragraph 13 is correct and DENY the remaining**

**allegations of Paragraph 13.  At all times relevant, Zhou constantly contacted Kai to**

**become involved with future businesses with Kai.  Zhou also helped prepare Exhibit**

**A to the complaint.**

14.    The Business Plan included a two year projection of total revenue between $80.0 and $200.00 million (U.S.), and a five year projection of total revenue between $397.8 and $800.0 million (U.S.).  Exhibit A, pp. 12-13.

**ANSWER:    Exhibit A speaks for itself.  Defendants DENY the remaining**

**allegations of this Paragraph 14.  Although Kai states further that the information**

**contained in Exhibit A was developed by <u>both</u> Kai and Zhou.**

-4-

15.    After presenting Plaintiffs with the Business Plan, Jiang showed Plaintiffs photographs of himself standing next to various American dignitaries, including former U.S. Secretary of State Madeline Albright, for U. S. Secretary of Commerce William Daley, and Chicago Mayor Richard Daley.

**ANSWER:    DENY, although ADMIT Kai at some point did tell Zhou he had visited China with certain American officials.**

16.    Jiang told Plaintiffs that Madeline Albright, William Daley, and Mayor Daley, among other well-known American political and business figures, had already agreed to become members of Kaible's Board of Directors.

**ANSWER:    DENY, although Zhou did indicate after he agreed to and did become President of Kaible in about July 2005, that Kai should recruit such officials to become members of Kaible's Board.**

17.    Defendants' assertions contained on the Business Plan regarding the estimates of Kaible's revenues were materially false and misleading, and Defendants knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

**ANSWER:    DENY.**

18.    Jiang's assertions regarding the above-named American dignitaries becoming members of Kaible's Board of Directors were materially false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

**ANSWER:    DENY.**

19.    At the same meeting, Jiang also showed Plaintiffs photographs of himself with a number of well-known Chinese political and business figures, including the Chinese Secretary of Foreign Affairs, Li Shao Xing, the Chinese Secretary of Commerce, Buo Xi Lai, and the Mayor of Shanghai, Han Zheng.

**ANSWER:     DENY, although ADMIT that after Zhou became President of Kaible**

**he often suggested Kai recruit different officials in Asia and America to assist**

**Kaible.**

20.     Jiang informed Plaintiffs that these Chinese dignitaries were "close personal friends" of his, and that they were invaluable business connections for Kaible.

**ANSWER:     DENY.**

21.     Finally, Jiang told Plaintiffs that Mr. Zhu Rong Ji, the retired Premier of China, was another potential member of the Kaible Board of Directors.

**ANSWER:     DENY and state further that after Zhou became President of Kaible,**

**he often suggested to Kai that various officials in America and China be enlisted to**

**help Kaible.**

22.     Jiang's statements regarding the above-named Chinese dignitaries, including Mr. Zhu Rong Ji, as a potential member of the Kaible Board of Directors, were materially false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

**ANSWER:     DENY.**

23.     After displaying his photographs and the Business Plan, Jiang asked Plaintiffs to invest $1.0 million (U.S.) in Kaible.

**ANSWER:     DENY, but state further that on many occasions Zhou sought to invest**

**with Kai.**

24.     Zhou told Jiang that Plaintiffs did not have that much money available to invest. Jiang insisted that Plaintiffs' investment in Kaible would be a "lifetime opportunity". He also stated that he would "keep the door open" to Plaintiffs until early July, 2005, and that he would allow them to purchase Kaible shares at $0.20 (U.S.) per share, because the three of them were such "good friends". Jiang then left Plaintiffs' home.

**ANSWER:    DENY.**

25.    Over the course of the following week, Jiang called Plaintiffs almost every day to reiterate what he described as the momentous opportunity he was offering them.

**ANSWER:    DENY and state further that Zhou and Kai had agreed to develop Kaible together and therefore had many discussions along these lines.**

26.    Jiang also asserted during these calls that an individual named Jenny Jiang, represented to be Jiang's sister, was in Beijing, China, setting up the Company, and that she had already applied for a corporate license in China. In addition, Jiang claimed that Kaible had already acquired a number of other investors.

**ANSWER:    ADMIT Jenny Jiang is Kai's sister and DENY the remaining allegations of this Paragraph 26.**

27.    Jiang's statement that Kaible had acquired a number of other investors was materially false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

**ANSWER:    DENY.**

28.    On May 30, 2005, at Jiang's invitation, Plaintiffs visited him at his home in Lake Forest ("May Meeting").

**ANSWER:    ADMIT that Kai and Plaintiffs met at Kai's parents' home in Lake Forest, Illinois and DENY the remaining allegations of this Paragraph 28.**

29.    At the May Meeting, after informing Plaintiffs that his newly-remodeled house was worth $7.0 million (U.S.), Jiang took Plaintiffs to his study to once again display the photographs of himself standing next to various American and Chinese luminaries.

**ANSWER:    DENY.**

30.    Following the May Meeting, Jiang continued to call Plaintiffs on a near-daily basis.  With each telephone call, Jiang reiterated that investment in Kaible was a "lifetime opportunity".

**ANSWER:    DENY except that Zhou and Kai talked regularly in connection with**

**the business.  Zhou contributed many ideas and suggestions and they developed**

**Exhibit A together.**

31.    During these telephone calls Jiang made materially false and misleading statements, including that:

(a)    Jiang had personally invested $10.0 million (U.S.) in Kaible;

(b)    Jiang had invested the $10.0 million (U.S.) because the Chinese government set this amount as a minimum in order to file an application for a "Mobile Value Added Services" or "VAS" company, a category of company into which Kaible fell; and

(c)    Jiang would spend an additional $5.0 million (U.S.) to perfect the Kaible technology.

**ANSWER:    DENY.**

32.    Jiang had not, in fact, personally invested $10.0 million (U.S.) in Kaible, nor would he spend $5.0 million (U.S.) Perfecting the Kaible technology.

**ANSWER:    ADMIT Kai had represented over time he would contribute in cash**

**and property in Kaible, totaling $15.0 million U.S.**

33.    In order to file an application for a VAS company in China, the Chinese government does not require $10.0 million (U.S.) but rather 1 million Chinese Yuan for a local city application and 10 million Chinese Yuan for a nationwide application, equivalent to approximately $120,000 and $1,200,000 (U.S.) respectively, as of the date of this filing.

**ANSWER:    Defendants have insufficient knowledge to answer the allegations of**

**Paragraph 33 and, therefore, DENY these.**

34.     Jiang knew or should reasonably have known that the statements set forth in Paragraph 31, above, were materially false and misleading, and he knowingly or recklessly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

**ANSWER:     DENY.**

35.     In addition, during this conversation, Jiang told Plaintiffs that he had hired a crew of workers and engineers from Motorola and other companies, and those engineers had already completed the invention process for the cellular telephone technology that Kaible would sell, and that Kaible had obtained all necessary patents in the United States for this technology.

**ANSWER:     DENY and state further that Zhou had attempted to recruit and hire various employees.  Zhou also hired friends and relatives of his in China who were not qualified to act for Kaible in breach of fiduciary duty to Kaible.**

36.     Jiang knew or should reasonably have known that the forgoing statements were materially false and misleading, and he knowingly or recklessly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

**ANSWER:     DENY.**

37.     In early June, 2005, Zhou told Jiang that he and his wife were considering investing in Kaible, and requested that Jiang send the necessary paperwork to review.

**ANSWER:     ADMIT that Zhou wanted to and did invest with Kai and Kaible, as they had done at various times in the past and DENY the remaining allegations of this Paragraph 37.**

38.     Jiang then faxed Plaintiffs a Kaible Subscription Agreement, the Kaible By-Laws, and a document entitled "Kaible Purchase of Common Stock".

**ANSWER:     ADMIT both Kai and Zhou invested in Kaible and DENY the remaining allegations of Paragraph 38.**

39.     Jiang incorporated Kaible on or around June 15, 2005.

**ANSWER:     ADMIT.**

40.     On June 20, 2005, prior to making an investment in Kaible, Zhou requested that Jiang confirm in writing that Jiang had invested $15.0 million (U.S.) in Kaible.  Jiang agreed to do so on the condition that Plaintiffs once again meet with him at his home.  Zhou agreed.

**ANSWER:     DENY but state further that Kai did agree to invest $15 million in cash and property in Kaible.**

41.     On June 21, 2007 (sic), Plaintiffs returned to Jiang's home in Lake Forest ("June Meeting"), where Jiang gave Plaintiffs a signed document, a copy of which is attached as Exhibit B, stating that:

    (a)     Jiang had contributed to Kaible "cash and property" with a combined value of approximately $15.0 million (U.S.); and
    (b)     Kaible's market capitalization value was $30.0 million (U.S.) as of June 20, 2005.

**ANSWER:     DENY and state further that Exhibit B speaks for itself.**

42.     The statements contained in Exhibit B made by Jiang were materially false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest in Kaible.

**ANSWER:     DENY.**

43.     Jiang also told Plaintiffs at the June Meeting that he had made so much money in 2004 that he would be personally donating $20.0 million (U.S.) to build 100 churches in China.

**ANSWER:     DENY.**

44.     Based upon the foregoing false and misleading statements by Defendants regarding Kaible's technology, progress, funding, and investors, taken individually or together, Plaintiffs decided to invest $150,000 of their savings in the Company.

**ANSWER:     DENY.**

45.     At the June meeting, Plaintiffs signed a Kaible Purchase of Common Stock Agreement and the Subscription Agreement.  They then executed a check to Kaible Corporation in the amount of $150,000, a copy of which is attached as Exhibit C.  Jiang requested that all

documents, including the check, be dated June 17, 2005, despite the fact that it was actually June 21, 2005.

**ANSWER:     ADMIT Plaintiffs invested $300,000 total in Kaible and DENY the remaining allegations of this Paragraph 45.**

46.     Following the June Meeting, Jiang continued his almost daily telephone calls to Plaintiffs, urging them to invest more money in Kaible, and stating that more investors had come on board.

**ANSWER:     DENY.**

47.     Jiang's statements regarding further investors in Kaible were false and misleading, and he knowingly made those false and misleading statements to induce Plaintiffs to invest additional monies in Kaible.

**ANSWER:     DENY.**

48.     Based upon Jiang's false and misleading statements regarding the additional investors, in addition to the foregoing false and misleading statements the Defendants had made regarding Kaible's technology, progress, funding, and initial investors, taken individually or taken together, Plaintiffs decided to invest another $150,000 in the Company.

**ANSWER:     DENY.**

49.     On July 5, 2005, Plaintiffs again met with Jiang at his home ("July Meeting").

**ANSWER:     ADMIT that Plaintiffs and Kai have met from time-to-time at Kai's parents' house and DENY the remaining allegations of Paragraph 49.**

50.     Jiang told Plaintiffs that he sold shares at $0.20 (U.S.) exclusively to them, and that this was a special price because of their friendship.

**ANSWER:     DENY.**

51.     Neither Jiang nor the Kaible documents made any mention of "common" or "preferred" Kaible stock gradations.  Jiang told Plaintiffs at the June Meeting that they would share 2% of all of Kaible's profits and losses, since they would own 2% of the stock if they decided to purchase an additional 750,000 Kaible shares.

**ANSWER:    DENY.**

52.    Plaintiffs then signed another Kaible Purchase of Common Stock and another Kaible Subscription Agreement, and executed a second check to Kaible in the amount of $150,000, thereby purchasing another 750,000 of Kaible shares.  A copy of the check is attached as Exhibit D.

**ANSWER:    DENY, except ADMIT that Plaintiffs invested a total of $300,000 in**

**the Kaible enterprise and that Zhou was President of Kaible.**

53.    Once again, Jiang requested that all documents, including the second check for $150,000, be dated June 17, 2005.

**ANSWER:    DENY.**

54.    Jiang's statements regarding Kaible's stock structure and Plaintiffs' ownership interest were materially false and misleading, and Jiang made them to induce Plaintiffs to invest in the Company.  In fact, at the time he made those statements, Jiang had secretly decided that Plaintiffs' stock would be deemed "common" stock, while Jiang's own investment would be deemed "preferred" stock.

**ANSWER:    DENY.**

55.    Jiang traveled to China in mid-July of 2005 to set up the Kaible office.  Also in mid-July of 2005, Plaintiffs went to China to visit their families.  In or around August, 2005, Jiang stated that he would open a Kaible office in Shanghai.

**ANSWER:    ADMIT Kai traveled to China for the purpose of setting up the Kaible**

**office with Zhou as President and DENY the remaining allegations of Paragraph 55.**

56.    Zhou remained in China late August until late December, 2005, and during that time, he helped Jiang set up the Shanghai office in terms of selecting equipment and furniture ("Shanghai Office").  Zhou returned to the United States in early January, 2006.

**ANSWER:    ADMIT and state further, at all times relevant Zhou was President of**

**Kaible.**

57.    Prior to Zhou's departure from China, Jiang assured Zhou that the next time Jiang was in the United States he would contact Plaintiffs and arrange a meeting to discuss Kaible's progress.

**ANSWER:    ADMIT there was constant communication between Kai and Zhou regarding the company and each person's prospective role in the company.**

58.    Jiang returned to the United States in February, 2006, to celebrate the Chinese New Year.  However, despite his promise to Zhou, Jiang failed to contact Plaintiffs to arrange a meeting.

**ANSWER:    DENY.**

59.    By the summer of 2006, in contrast to Jiang's incessant telephoning of the previous year, Jiang had failed to contact Plaintiffs even once to update them on Kaible's progress.

**ANSWER:    DENY and state further that Zhou was responsible for overseeing the operation of the company and was in charge of personnel hiring, equipment purchasing, human resources, legal and government filings for Kaible.  He was thoroughly involved in the day-to-day workings of the company.**

60.    Throughout 2006, Plaintiffs' concern for their investment mounted as Defendants' silence stretched on.

**ANSWER:    DENY.**

61.    In October, 2006, Plaintiffs traveled to China to visit family and friends.  Once there, they tried repeatedly and without success to reach Jiang by telephone.

**ANSWER:    Defendants have no knowledge of the truth of this Paragraph and therefore DENY it.**

-13-

62.    In November, 2006, after Plaintiffs had left numerous unanswered messages on Jiang's cellular phone, Jiang finally returned one of Plaintiffs' calls.

**ANSWER:**    **DENY and state further that Plaintiffs and Kai were in touch on a**

**regular basis.**

63.    At Plaintiffs' insistence, Jiang reluctantly agreed to meet with them in Shanghai in December of 2006 ("Shanghai Meeting").

**ANSWER:**    **ADMIT Kai met with Plaintiffs in Shanghai and DENY the remaining**

**allegations of this Paragraph 63.**

64.    When meeting with Jiang, Plaintiffs noted that since Zhou's last trip to China in 2005-2006, the Shanghai Office had considerably downsized, and was now operating out of a small, cramped apartment.

**ANSWER:**    **ADMIT that through Zhou's malfeasance and breach of fiduciary**

**duty as President of Kaible, the Shanghai office was downsized and DENY the**

**remaining allegations of this Paragraph 64.**

65.    At the Shanghai Meeting, Plaintiffs requested that Jiang provide them with financial documents pertaining to their investments.

**ANSWER:**    **DENY.**

66.    Jiang refused, stating only that he would send the statements to them "later".

**ANSWER:**    **DENY.**

67.    Plaintiffs returned to the United States in December, 2006, empty-handed, having learned nothing regarding the fate of their investments.

**ANSWER:**    **DENY.**

68.    In February, 2007, Plaintiffs once again called Jiang to request financial information.  Although Jiang took Plaintiffs' call, he immediately transferred them to his sister,

-14-

Jenny Jiang. When Plaintiffs requested that Ms. Jiang send them the financial information, Ms. Jiang refused. She then informed Plaintiffs that Jiang would have to speak with his lawyer before sending them anything.

**ANSWER:    DENY.**

69.    Through disclosures made by Jenny Jiang, inadvertently or otherwise, during the course of this telephone conversation, Plaintiffs came to understand the following:

(a)    Jiang had not, in fact, invested $15.0 million (U.S.) in Kaible. Rather, he had invested closer to $300,000;

(b)    Kaible had far fewer investors than Jiang had led Plaintiffs to believe. In fact, Kaible had perhaps as few as three investors:    Jiang himself and the Plaintiffs;

(c)    Defendants had secretly deemed Plaintiffs' Shares "common" shares, while they had deemed Jiang's shares "preferred" shares. Therefore, should Kaible be sold, Plaintiffs would be last in line for the return of their money; and

(d)    Jiang was in fact considering selling Kaible.

**ANSWER:    DENY.**

70.    At the time of this filing, Plaintiffs have still received no information regarding the fate of their investment in Kaible. Based upon information and belief, Plaintiffs presently believe that their Stock is worthless.

**ANSWER:    DENY.**

71.    On September 13, 2007, in accordance with the Illinois Securities Law of 1953, Plaintiffs sent a letter to Defendants electing to void the sale of the 1,500,000 Shares, and requesting that Kaible repurchase the Shares for the original cost of $300,000 plus 10% interest per annum from the date of its purchase by Plaintiffs (the "Demand Letter"). A copy of the Demand Letter is attached as Exhibit E.

**ANSWER:    ADMIT a letter was received on or about the date alleged, and that**

**the letter speaks for itself, and DENY the remaining allegations of Paragraph 71.**

-15-

72.     At the time of this filing, Defendants have neither complied with nor otherwise responded to Plaintiffs' Demand Letter.

**ANSWER:     ADMIT that Kai and Kaible have not "complied" with Plaintiffs'**

**demand letter and state further that Plaintiffs' have no right to "demand"**

**compliance.**

**COUNT I**
**Against Both Defendants for**
**Violation of Section 10(b) of the Securities Exchange Act**
**and Rule 10b-5 Promulgated Thereunder**

73.     Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 72 above as Paragraph 73 of the Complaint.

**ANSWER:     Defendants reallege and incorporate by reference as if fully stated**

**herein their answers to Paragraphs 1 through 72 above as Paragraph 73 of this**

**Answer.**

74.     Defendants carried out a plan, scheme and course of conduct which was intended to and did (I) deceive Plaintiffs, as alleged herein; (ii) misrepresent the financial condition and business prospects of Kaible; and (iii) cause Plaintiffs to purchase the Shares.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

**ANSWER:     DENY.**

75.     Defendants (I) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to correct the misleading statement, and did so with the intent that Plaintiffs would rely on the misrepresentations and/or the incomplete and false information in making their decisions to purchase the Shares; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5.

**ANSWER:     DENY.**

76.     The willfulness, motive, knowledge, and recklessness of Jiang is imputed to Kaible, which is primarily liable for the securities law violations or is liable for the acts of Jiang under the doctrine of respondent superior.

**ANSWER:     DENY.**

77.     In addition to the duties of full and truthful disclosure imposed on Defendants as a result of their making of affirmative statements, or participating in the making of affirmative statements to Plaintiffs, Defendants had a duty to promptly disseminate truthful information that would be material to Plaintiffs, including accurate and truthful information with respect to Kaible's financial condition and business prospects.

**ANSWER:     DENY.**

78.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the wires and mails, engaged and participated in a continuous course of conduct to provide materially false and misleading information about the financial condition and business prospects of Kaible, as specified herein.

**ANSWER:     DENY.**

79.     In light of these false and misleading misrepresentations, taken individually or together, Plaintiffs purchased the Shares.  At the time of Defendant's misrepresentations and omissions, Plaintiffs were ignorant of their falsity, believed them to be true, and justifiably relied on them.  Had Plaintiffs known of the true financial condition and business prospects of Kaible, which were intentionally misrepresented by Defendants, Plaintiffs would not have purchased or otherwise acquired the Shares.

**ANSWER:     DENY.**

80.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

**ANSWER:     DENY.**

81.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder.

**ANSWER:     DENY.**

**WHEREFORE, Defendants request relief as set out below.**

## COUNT II
### Against Jiang for Violation of
### Section 20(a) of the Securities Exchange Act

82.    Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 81 above as Paragraph 82 of the Complaint.

**ANSWER:    Defendants reallege and incorporate by reference as if fully stated herein their answers to Paragraphs 1 through 81 above as Paragraph 82 of this Answer.**

83.    Defendant Jiang was the controlling person of Kaible within the meaning of Section 20(a) of the Securities Exchange Act as alleged herein.

**ANSWER:    DENY.**

84.    Defendant Jiang had the power or ability and exercised the same to cause Kaible to engage in the illegal conduct and practices complained of herein.

**ANSWER:    DENY.**

85.    As set forth above, Kaible violated Section 10(b) and Rule 10b-5 by its acts and omissions as alleged in this Complaint.  By virtue of his position as controlling person, Jiang is liable pursuant to Section 20(a) of the Securities Exchange Act for Kaible's violations of law.

**ANSWER:    DENY.**

86.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

**ANSWER:    DENY.**

**WHEREFORE, Defendants request relief as set out below.**

## COUNT III
### Against Both Defendants for Violations of
### Section 12(a)(2) of the Securities Act

87.    Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 86 above as Paragraph 87 of the Complaint.

**ANSWER:    Defendants reallege and incorporate by reference as if fully stated herein their answers to Paragraphs 1 through 86 above as Paragraph 87 of this Answer.**

88.    Defendants were sellers, offerors and/or solicitors of the sale of the Shares sold to Plaintiffs.

**ANSWER:    DENY.**

89.    Defendants carried out a plan, scheme and course of conduct which was intended to and did (I) deceive Plaintiffs, as alleged herein; (ii) misrepresent the financial condition and business prospects of Kaible; and (iii) cause Plaintiffs to purchase the Shares.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

**ANSWER:    DENY.**

90.    Defendants (I) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to correct the misleading statements, and did so with the intent that Plaintiffs would rely on the misrepresentations and/or the incomplete and false information in making their decisions to purchase the Shares; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs.

**ANSWER:    DENY.**

91.    The willfulness, motive, knowledge, and recklessness of Jiang is imputed to Kaible, which is primarily liable for the securities law violations or is liable for the acts of Jiang under the doctrine of respondent superior.

**ANSWER:    DENY.**

92.    In addition to the duties of full and truthful disclosure imposed on Defendants as a result of their making of affirmative statements, or participating in the making of affirmative

statements to Plaintiffs, Defendants had a duty to promptly disseminate truthful information that would be material to Plaintiffs, including accurate and truthful information with respect to Kaible's financial condition and business prospects.

**ANSWER:     DENY.**

93.     Defendants, individually and in concert, directly and indirectly, the use, means or instrumentalities of interstate commerce and/or of the wires and mails, engaged and participated in a continuous course of conduct to provide materially false and misleading information about the financial condition and business prospects of Kaible, as specified herein.

**ANSWER:     DENY.**

94.     Plaintiffs relied on Defendants' false and misleading misrepresentations, taken individually or together, Plaintiffs purchased the Shares.  At the time of Defendant's misrepresentations and omissions, Plaintiffs were ignorant of their falsity, believed them to be true, and justifiably relied on them. Had Plaintiffs known of the true financial condition and business prospects of Kaible, which were intentionally misrepresented by Defendants, Plaintiffs would not have purchased or otherwise acquired the Shares.

**ANSWER:     DENY.**

95.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

**ANSWER:     DENY.**

96.     By virtue of the foregoing, Defendants have violated Section 12(a)(2) of the Securities Act of 1933.

**ANSWER:     DENY.**


**WHEREFORE, Defendants request relief as set out below.**

**COUNT IV**
**Against Both Defendants for**
**Violations of Illinois Securities Law of 1953**

97.     Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 96 above as Paragraph 97 of the Complaint.

**ANSWER:     Defendants reallege and incorporate by reference as if fully stated herein their answers to Paragraphs 1 through 96 above as Paragraph 97 of this Answer.**

98.     Defendants carried out a plan, scheme and course of conduct which was intended to and did (I) deceive Plaintiffs, as alleged herein; (ii) misrepresent the financial condition and business prospects of Kaible; and (iii) cause Plaintiffs to purchase the Shares.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

**ANSWER:     DENY.**

99.     Defendants (I) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to correct the misleading statements, and did so with the intent that Plaintiffs would rely on the misrepresentations and/or the incomplete and false information in making their decisions to purchase the Shares; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in violation of the Illinois Securities Law of 1953, 815 ILCS 5/1 *et seq*.

**ANSWER:     DENY.**

100.     All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged above and as described in Section 2.4 of the Illinois Securities Law of 1953, 815 ILCS 5/2.4.

**ANSWER:     DENY.**

101.     In addition to the duties of full and truthful disclosure imposed on Defendants as a result of their making of affirmative statements, or participating in the making of affirmative statements to Plaintiffs, Defendants had a duty to promptly disseminate truthful information that would be material to Plaintiffs, including accurate and truthful information with respect to Kaible's financial condition and business prospects.

**ANSWER:     DENY.**

102.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the wires and mails, engaged and participated in a continuous course of conduct to provide materially false and misleading information about the financial condition and business prospects of Kaible, as specified herein.

-21-

**ANSWER:     DENY.**

103.     Plaintiffs relied on Defendants' false and misleading misrepresentations, taken individually or together, Plaintiffs purchased the Shares. At the time of Defendants' misrepresentations and omissions, Plaintiffs were ignorant of their falsity, believed them to be true, and justifiably relied on them. Had Plaintiffs known of the true financial condition and business prospects of Kaible, which were intentionally misrepresented by Defendants, Plaintiffs would not have purchased or otherwise acquired the Shares.

**ANSWER:     DENY.**

104.     As a direct and proximate result fo Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

**ANSWER:     DENY.**

105.     On September 13, 2007, Plaintiffs sent a notice to Defendants, voiding the purchase of the Shares. Defendants never responded.

**ANSWER:     ADMIT a notice was sent, DENY its effect, as well as the remaining**

**allegations of this Paragraph 105.**

106.     By virtue of the foregoing, Defendants have violated Section 12 of the Illinois Securities Law of 1953, 815 ILCS 5/12.

**ANSWER:     DENY.**

**WHEREFORE, Defendants request relief as set out below.**

**COUNT V**
**Against Both Defendants for**
**Common Law Fraud**

107.     Plaintiffs reallege and incorporate by reference as if fully stated herein Paragraphs 1 through 106 above as Paragraph 107 of the Complaint.

**ANSWER:**    **Defendants reallege and incorporate by reference as if fully stated**

**herein their answers to Paragraphs 1 through 106 above as Paragraph 107 of this**

**Answer.**

108.    Defendants carried out a plan, scheme and course of conduct which was intended to and did (I) deceive Plaintiffs, as alleged herein; (ii) misrepresent the financial condition and business prospects of Kaible; and (iii) cause Plaintiffs to purchase the Shares.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

**ANSWER:**    **DENY.**

109.    Defendants (I) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to correct the misleading statements, and did so with the intent that Plaintiffs would rely on the misrepresentations and/or the incomplete and false information in making their decisions to purchase the Shares; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5.

**ANSWER:**    **DENY**.

110.    The willfulness, motive, knowledge and recklessness of Jiang is imputed to Kaible, which is primarily liable for the securities law violations or is liable for the acts of Jiang under the doctrine of respondent superior.

**ANSWER:**    **DENY.**

111.    In addition to the duties of full and truthful disclosure imposed on Defendants as a result of their making of affirmative statements, or participating in the making of affirmative statements to Plaintiffs, Defendants had a duty to promptly disseminate truthful information that would be material to Plaintiffs, including accurate and truthful information with respect to Kaible's financial condition and business prospects.

**ANSWER:**    **DENY.**

112.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the wires and mails, engaged and participated in a continuous course of conduct to provide materially false and misleading information about the financial condition and business prospects of Kaible, as specified herein.

**ANSWER:    DENY.**

113.    Plaintiffs relied on Defendants' false and misleading misrepresentations, taken individually or together, Plaintiffs purchased the Shares.  At the time of Defendants' misrepresentations and omissions, Plaintiffs were ignorant of their falsity, believed them to be true, and justifiably relied on them.  Had Plaintiffs known of the true financial condition and business prospects of Kaible, which were intentionally misrepresented by Defendants, Plaintiffs would not have purchased or otherwise acquired the Shares.

**ANSWER:    DENY.**

114.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages totaling $300,000 in connection with their purchases of Kaible Shares.

**ANSWER:    DENY.**

**WHEREFORE, Defendants request that the Court enter judgment in their favor and against the Plaintiffs and that it award them their costs and fees in defending this action.**

## II

## AFFIRMATIVE DEFENSES

As their Affirmative Defenses, Defendants raise the following:

### A

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims fail as being barred by the statute of limitations.

### B

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs have failed to mitigate their damages.

### C

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs own wrongdoing in defrauding Kaible bars their recovery under the common law in peri delicto or unclean hands defense.

### D

### FOURTH AFFIRMATIVE DEFENSE

Any alleged damages Plaintiffs claim must be offset against damages they caused Kaible and the company for breach of fiduciary duty.

### E

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery under the doctrine of estoppel.

### F

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs have not effected proper service of process on Kai, and that the Court, therefore, does not have personal jurisdiction over Kai.

### III

### COUNTERCLAIM OF KAIBLE

As its Counterclaim against Plaintiff-Counterdefendant, Deming Zhou, Kaible states as follows:

1.      The Court has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. 1367.

2.      The Court also has jurisdiction over this matter pursuant to diversity jurisdiction.

3.     At all times relevant, Plaintiff-Counterdefendant Zhou was the President of Kaible and a co-founder with Kai.  Indeed, recognizing his status as President, in or about June, 2005, Kai and Zhou agreed that Zhou would be President and would be responsible for various operational responsibilities for Kaible.

4.     These duties included:

     (a)     taking all necessary steps to insure that Kaible had made all legal and regulatory filings;

     (b)     making all necessary arrangements to obtain a fair-market lease for Kaible in Shanghai, China;

     (c)     obtaining fair market construction services from Chinese contractors to build out the Shanghai offices of Kaible;

     (d)     purchasing reliable office equipment at arms-length from reliable sources;

     (e)     purchasing real-time retail data about customers from arms-length sources;

     (f)     hiring experienced non-related individuals to work for Kaible, based on merit rather than their relationship with Zhou; and

     (g)     overseeing operations in general and not putting himself or Kaible in a conflict of interest position.

5.     Zhou, as President of Kaible, owed the company a fiduciary duty of good faith, honesty and loyalty.  This duty included not putting his own personal interests ahead of those of Kaible.

6.     In the summer of 2005, after he became President of Kaible, Zhou breached his fiduciary duties to the company in at least the following ways:

(a)    he failed to take any action to file appropriate paperwork for the company in the United States and China, despite specifically representing he would do so.

(b)    On information and belief, Zhou received a personal "payment" at the time the Kaible lease in Shanghai was signed to steer the Kaible lease to the landlord, Jia Jia.  Although the amount of the payment of the Kaible rent to Zhou is currently not known, the fact of the payment was disclosed to Jenny Jiang at the end of the Kaible lease in Shanghai.  The receipt of such a payment was a conflict of interest and breach of fiduciary duty by Zhou.

(c)    On information and belief, Zhou also received a payment or series of payments from the Shanghai Guang Lian Constructions & Decoration Engineering Co., Ltd. In return for steering the construction of Kaible's offices.  Once again, although the amount of the payment is currently unknown, Kaible learned of it from the company who sought to pay Jenny Jiang the same payment they had paid Zhou.

(d)    Zhou also steered office equipment purchases to personal friends of his without regard for the quality of the office equipment he purchased.  This included purchasing more than 100,000 RMB worth of desktop computers. Rather than bidding out the contract, or purchasing from a reliable source like Dell China, Zhou purchased the computers from a personal friend, Cun Qian Wang.  The computers were of an inferior quality and broken-

-27-

down from the start.  The check which was written for the computers was made payable to Wang's real estate company.

(e)      Zhou also sought and submitted reimbursement for purchasing a new laptop computer (RMB 9,488), when in reality the one he purchased was used.  Although he caused Kaible to reimburse him for new equipment, the actual price he paid was substantially less than the reimbursement.

(f)      Zhou also steered a contract to purchase retail customer data to friends of his to whom he caused Kaible to make substantial payments.  Rather than purchase realtime customer data as needed, Zhou's friends supplied Kaible with out-of-date data, worthless to the company.

(g)      Zhou caused Kaible to put on its payroll unnecessary and incompetent employees who were hired only because of their connection to him.  This included a friend of his wife, Ying Wu, his sister's friend, Zheng Qiang Gao and Li Zhi Hu.  These individuals performed little or no work but received substantial payments from Kaible as "employees".

7.      Each of the actions taken above constitutes a breach of Zhou's duty of good faith, honesty and loyalty to Kaible.

8.      As a direct result of these breaches of fiduciary duty, Kaible has suffered injury. This injury constituted (a) direct, out-of-pocket expenses paid to Zhou, Zhou's friends and relatives and payments diverted from Kaible for incomplete, non-existent or inferior services and/or non-functioning equipment.  On information and belief, in addition by virtue of these breaches of fiduciary duty, Kaible lost customers and was not able to effectuate its business.

WHEREFORE, Kaible prays for judgment in its favor or an amount in excess of $100,000, punitive damages in an amount of $1,000,000, and its costs of this action.

Respectfully submitted,

KAIBLE CORPORATION and KAI JIANG,
Defendants and Counter-plaintiffs

By:     s/ David A. Genelly
        One of their attorneys

David A. Genelly
James E. Judge
VANASCO GENELLY & MILLER
33 North LaSalle Street, Suite 2200
Chicago, IL   60602
(312) 786-5100

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that copies of the foregoing Notice of Filing, Answer, Affirmative Defenses and Counter-Claim were served upon:

Lynn A. Ellenberger
Anthony R. Licata
Jessica Anne Edgerton
Shefsky & Froelich, Ltd.
111 E. Wacker Drive, Suite 2800
Chicago IL 60601


via e-mail through the electronic filing system for the United States District Court for the Northern District of Illinois, Eastern Division and by United States Mail, postage prepaid, at 33 North LaSalle Street, Chicago IL 60602, before 5:00 P.M. on January 30, 2008.


s/ David A. Genelly